UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RANDOLPH WREN WILKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:15CV978 RLW |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of Defendant's final decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, the Court reverses the decision of the Commissioner and remands for further review.

**I. Procedural History**

On July 8, 2013, Plaintiff protectively filed an application for DIB alleging disability beginning March 14, 2010 due to hearing problems; migraines; vision loss right eye; neuropathy in feet and right hand; hypertension; diabetes type II; and exposure to agent orange. (Tr. 13, 83, 109-17) The application was denied, and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 77-89) On June 25, 2014, Plaintiff testified before an ALJ in a hearing held by video teleconference. (Tr. 47-76) On July 1, 2014, the ALJ determined that Plaintiff had not been under a disability from March 14, 2010, through the date of the decision. (Tr. 13-22) Plaintiff then filed a request for review, and on April 27, 2015, the Appeals Council denied said request. (Tr. 1-4) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the June 25, 2014 video teleconference hearing before the ALJ, Plaintiff was represented by counsel. Plaintiff testified that he joined the United States Air Force in 1967 and served for 24 years as a criminal investigator and policeman. Plaintiff then went to college and worked for the St. Louis Housing Authority as director. He later worked for the Department of Defense as an antiterrorism officer in Germany. When he returned to Missouri, he worked for the State of Missouri as an investigator of fraud. His last position was as a criminal investigator for the Missouri Attorney General's office. Plaintiff was let go following the election of a new Attorney General and a dispute with his supervisor. Plaintiff testified that he was in a lot of pain toward the end of his career. His feet started to hurt, and he experienced serious migraines. While Plaintiff enjoyed his job, he did not believe that he could currently perform his job. His pain and neuropathy had worsened, and he was unable to use his right hand. (Tr. 49-54)

Plaintiff stated that his wife owned two horses, and he helped her maintain them. He was able to bathe the horses but not feed them bales of hay. Plaintiff further testified that his job as an investigator involved research and traveling to perform interviews. However, he could no longer travel because he had difficulty feeling the gas pedal with his foot. His doctor told him the neuropathy would never improve. Plaintiff also testified regarding pain in his neck, shoulder, arms, hands, legs, and feet. He described the pain as lightning bolts. Plaintiff also had painful nodules on his feet, which had decreased in size but were still present. The real pain was in his entire foot, which was a shooting pain when he took a step and even when he slept. (Tr. 54-60)

Plaintiff's attorney also questioned Plaintiff about his conditions. Plaintiff stated that he had problems with both his right and his left hand. Specifically, Plaintiff stated that his left hand had started to shake, and his doctor told him the tremors were a result of the diabetes. He further

testified that he could possibly make a two-hour round trip drive between St. Louis and Columbia, Missouri by stopping for bathroom breaks and using the cruise control. However, he would be unable to make a four-hour drive to Kansas City due to the need to stop for water and weather-change headaches. (Tr. 60-62)

Plaintiff further testified that he took ten different medications on a daily basis. The diabetes medication caused weight gain, and Invokan caused dizziness. All of his drugs caused side effects. Plaintiff stated that his wife administered his insulin injections. (Tr. 62-64)

With regard to daily activities, Plaintiff stated he could no longer mow the grass. He paid someone to mow and to shovel snow in the winter. Plaintiff's laundry room was in the basement. He was unable to carry baskets of clothes up and down the stairs. Instead, he threw the clothes down the stairs, and his wife brought up the folded clothes. Plaintiff had some hearing loss in both ears. He had an appointment with the VA to look into a hearing aide. Although Plaintiff's diabetes was not well-controlled, he had not been hospitalized for symptoms related to his diabetes. However, his diabetes caused him to become dehydrated and dizzy. Plaintiff believed he could walk as far as he wanted so long as he could stand the pain. Walking was never comfortable. Aside from the painful nodules, Plaintiff experienced a constant burning sensation in his feet that felt like frostbite. He could walk on a treadmill and tolerate the pain for up to 15 minutes. He then needed to get off the treadmill because walking was too painful. (Tr. 64-69)

A vocational expert ("VE") also testified at the hearing. The VE stated that Plaintiff's past work included antiterrorism officer and criminal investigator, which were medium and skilled positions. His job as a manager of security was sedentary and skilled. However, Plaintiff stated that the job, as he performed it, required him to be out patrolling the area with the

other officers. The ALJ then asked the VE to assume a hypothetical individual limited to light exertional duties. The VE stated that this person could not return to Plaintiff's past relevant work as an investigator but could perform the director of security position as described by the Dictionary of Occupational Titles ("DOT") but not as Plaintiff performed it. The ALJ then asked Plaintiff about his ability to type and write with his right hand. Plaintiff stated that he was taking online college courses and could still type with both hands, but not as well as before. He testified that one hand shook, and the other hand was numb. (Tr. 69-74)

### III. Medical Evidence

On November 11, 2011, Plaintiff complained of nodules on the bottom of his feet. Plaintiff reported that he experienced pain when he walked barefoot on hard floors. He also had numbness mid-calf to the sole of his feet secondary to diabetic neuropathy. Plaintiff denied any weakness or tingling distally. Erik V. Nott, M.D., assessed plantar fibromatosis, also known as Lederhosen's disease. Dr. Nott planned to treat Plaintiff non-operatively. (Tr. 242-43)

Plaintiff complained of right shoulder pain on December 3, 2012. He had pain, spasm, and decreased range of motion. A CT of the cervical spine showed no evidence of acute fracture. Plaintiff had mild to moderate multilevel degenerative disease, most pronounced at C5-C6. The report found intervertebral disc space narrowing at C3-C4, C4-C5, C5-C6, and C6-C7, with osteophytosis. Plaintiff also had mild diffuse disc bulge without central canal stenosis at C3-C4, C4-C5, and C5-C6. Plaintiff's pain improved with pain medication. Plaintiff was diagnosed with cervical radicular pain and was discharged with pain medication and muscle relaxants. (Tr. 250-54)

On January 11, 2013, Plaintiff was examined pursuant to his application to the VA for disability benefits. Plaintiff's diagnoses were diabetic neuropathy and type II diabetes mellitus.

4

Plaintiff reported numbness and burning sensations in both feet and both legs up to his knees, as well as the first three fingers in his right hand. His symptoms were worsening. Anahit Danielyan, M.D., opined that Plaintiff was unable to perform sedentary work. (Tr. 191-205) Dr. Danielyan stated that Plaintiff's diabetic peripheral neuropathy impacted his ability to work. Plaintiff was in constant pain and could not walk more than 20 minutes without taking a break. He could not stand more than 15 minutes without taking a break. Any movement with his right hand caused pain. (Tr. 465-74)

### The ALJ's Determination

In a decision dated July 1, 2014, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. He had not engaged in substantial gainful activity since March 14, 2010, the alleged onset date. The ALJ determined that Plaintiff had the following severe impairments: Degenerative Disc Disease; diabetes; and peripheral neuropathy. However, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-16)

After carefully considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). The ALJ noted that the Social Security Act used a different method for assessing impairments than the VA's disability ratings and thus made an independent RFC assessment. The ALJ determined that Plaintiff was capable of performing past relevant work as a security manager as described by the DOT because that work did not require the performance of work-related activities precluded by the Plaintiff's RFC. The ALJ alternatively found that, in light of Plaintiff's age, education, work experience, and RFC, the Plaintiff had acquired work skills from

past relevant work that were transferable to other occupations with jobs that existed in significant numbers in the national economy, including security manager. Therefore, the ALJ found that, based on a RFC for the full range of sedentary work, and in light of his closely approaching retirement age, education, and transferable work skills, the Medical-Vocational Guidelines directed a finding of "not disabled." The ALJ thus concluded that Plaintiff had not been under a disability from March 14, 2010 through the date of the decision. (Tr. 16-22)

### V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as

the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment. *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. *Id.*

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to

plaintiff's complaints under the *Polaski*[1] factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## **VI. Discussion**

Plaintiff raises two arguments in his Brief in Support of the Complaint. First, Plaintiff asserts that the ALJ failed to find credible medical evidence to support the findings regarding Plaintiff's RFC. Next, Plaintiff contends that the ALJ committed reversible error by failing to give proper weight to the opinion of the examining physician and vocational expert. In response, Defendant maintains that substantial evidence supports the ALJ's RFC assessment and that the ALJ properly determined that Plaintiff could perform his past relevant work. Upon thorough review of the parties' briefs and the entire record, the Court finds that the ALJ did not properly assess Plaintiff's RFC such that the case should be remanded for further review.

Residual Functional Capacity is a medical question, and the ALJ's assessment must be supported by substantial evidence. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citations omitted). RFC is defined as the most that a claimant can still do in a work setting despite that claimant's limitations. 20 C.F.R. § 416.945(a)(1). "Ordinarily, RFC is the

---

[1] The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

8

individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (Soc. Sec. Admin. July 2, 1996) (emphasis present).

The ALJ has the responsibility of determining a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). "An 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Sieveking v. Astrue*, No. 4:07 CV 986 DDN, 2008 WL 4151674, at *9 (E.D. Mo. Sept. 2, 2008) (quoting SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996)). Further, "[t]he ALJ's RFC determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Tinervia v. Astrue*, No. 4:08CV00462 FRB, 2009 WL 2884738, at *11 (E.D. Mo. Sept. 3, 2009) (citations omitted); *see also Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001) (citations omitted) (finding that medical evidence "must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' . . . ."). In addition, it is well settled "that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citation omitted). The ALJ may not rely upon his or her own inferences. *Id.* at 858.

Here, Plaintiff correctly notes that, in making the RFC determination, the ALJ failed to support his findings with specific medical evidence. The RFC finding sets forth an ability to perform sedentary work with no further limitations. (Tr. 16) However, the opinion contains no discussion of how the medical evidence supports Plaintiff's capacity for sedentary work level, which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

Other than Dr. Danielyan's opinion, which the ALJ gave little weight, none of the physicians addressed Plaintiff's ability to function in the workplace. Indeed, the ALJ acknowledged that the record contained no opinions from treating or examining physicians. (Tr. 19) Dr. Danielyan with the VA, opined that Plaintiff was unable to perform sedentary work. (Tr. 205) In addition, Dr. Danielyan stated that Plaintiff's diabetic peripheral neuropathy impacted his ability to work in that he was in constant pain and could not walk more than 20 minutes without taking a break. He could not stand more than 15 minutes without taking a break, and any movement with his right hand caused pain. (Tr. 473)

The ALJ points to no medical evidence in the record demonstrating Plaintiff's ability to function in the workplace. Instead, the ALJ draws upon his own inferences from the medical evidence in finding that Plaintiff could perform sedentary work. "Unless the inferences are supported by opinions from treating or consultative experts, they do not constitute substantial evidence." *Hess v. Colvin*, No. 4:14CV1593 CDP, 2015 WL 5568056, at *11 (E.D. Mo. Sept. 22, 2015) (citation omitted); *see also Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009) (finding that the law forbids the ALJ from "playing doctor"). In evaluating Plaintiff's RFC, the

ALJ "was required to consider at least some supporting evidence from a medical professional." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

Because the ALJ's RFC determination is not supported by substantial evidence, the Court will remand the case to the ALJ for further review. The decision is unclear as to what medical evidence supports the ALJ's determination that Plaintiff had the RFC to perform sedentary work. Further, the record is vague as to Plaintiff's ability to perform his past relevant work as a security manager. The VE testified that Plaintiff could not work as a director of security as he performed it and that "he *may* be able to do it as described by the *DOT*." (Tr. 72) (emphasis added). The VE further opined that he thought Plaintiff could perform the job of security manager "as light if he's doing purely the supervisory duties." (Tr. 72) However, the ALJ limited Plaintiff to sedentary work, and nothing in the record or in the decision indicates an ability to perform light work.[2] Therefore, on remand, the ALJ shall support the RFC determination with medical evidence that addresses the Plaintiff's ability to function in the workplace. To the extent that the record is insufficient, the ALJ should re-contact the examining physicians or order further consultative examinations that specifically address Plaintiff's RFC. Further, the ALJ may want to seek clarification from the VE regarding Plaintiff's ability to perform his past relevant work.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **REVERSED and REMANDED** to the Commissioner for further

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

proceedings consistent with this Memorandum and Order. An appropriate Order of Remand shall accompany this Memorandum and Order.

Dated this 22nd day of September, 2016.



**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**